U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

## UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

2020 SEP -1  PM 4: 34

CLERK

BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| **RICHARD AND NANCY SMITH,** | : | CIVIL ACTION |
| **husband and wife** | : | |
| 111 Park Street | : | Docket No.: |
| Highgate Center, VT 05459 | : | 2:20-cv- 127 |
| | : | JURY TRIAL DEMANDED |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **NORWALK PRECAST MOLDS, INC.,** | : | |
| **Individually and d/b/a NORWALK** | : | |
| **PRECAST MOLDS** | : | |
| 205 Industrial Parkway | : | |
| Norwalk, OH 44857 | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT – CIVIL ACTION

Plaintiffs, Richard and Nancy Smith, husband and wife, hereby allege and state as

follows:

### PARTIES

1.     Plaintiffs are citizens and residents of the State of Vermont, residing at the above

captioned address.

2.     Defendant, Norwalk Precast Molds, Inc., Individually and d/b/a Norwalk Precast

Molds ("Norwalk Precast") is a corporation organized under the laws of the State of Ohio, with a

headquarters and/or principal place of business located at the above captioned address.

### JURISDICTION AND VENUE

3.     Jurisdiction is proper in the District of Vermont pursuant to 28 U.S.C. §

1332(a)(3) because the amount in controversy exceeds $75,000 and the parties are citizens of

different states.

4.      Jurisdiction is further proper within the District of Vermont as Defendant routinely and systematically conducts business within the State of Vermont so as to purposefully avail themselves to the jurisdiction of the District of Vermont.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as the events giving rise to the instant claim occurred within the District of Vermont, specifically at the facility of Richard Smith's employer, Camp Precast Concrete Products ("Camp Precast"), located at 78 Precast Road, Milton, VT 05468.

## FACTS GIVING RISE TO THE ACTION

6.      At all times material hereto, Plaintiff, Richard Smith, was acting within the course and scope of his employment with Camp Precast.

7.      At all times material hereto, Defendant, through its respective officers, employees, directors, trade groups, successors, predecessors, servants, franchisees, franchisors, trade names, distributors, sales forces, and/or agents of any and all other types was in the trade or business of designing, manufacturing, testing, marketing, selling, and/or distributing precast concrete products and accessories including, but not limited to, bottom casting turning devices.

8.      At all times material hereto, Richard Smith's employer, Camp Precast, possessed a bottom casting turning device ("the device") that was designed, manufactured, tested, marketed, sold and/or distributed by Defendant.

9.      At all times material hereto, Camp Precast used the device for moving and turning over large sections of concrete septic tanks that it manufactured for sale.

10.     At all times material hereto, Camp Precast manufactured septic tank sections by pouring concrete into a pre-cast mold in the shape of the specific section being made.

11.     The device consists of a square shaped base and a vertical overhead frame that is connected with two (2) hinge pins.  The hinge pins are removed by the operator in order to allow the base to rotate vertically so the septic tank section being transported can be turned right side up.  True and correct copies of photographs of the device and hinge pins are attached hereto as Exhibit "A".

12.     In order to move or turn over a septic tank section during the curing process, the pre-cast form loaded device is attached to a forklift crane for transport.

13.     On or about October 10, 2018, Richard Smith was working next to a forklift that was transporting the device, which had not been loaded with a pre-cast form, to be attached to an overhead crane in the molding area when, suddenly and without warning, the hinge pins connecting the base to the frame of the device dislodged, or had dislodged during transportation of the device, causing the device, which weighs approximately 1,000 pounds, to collapse and fall on Richard Smith which caused him to suffer serious, painful and catastrophic injuries as more fully described herein below.

14.     As a result of the aforesaid incident, Richard Smith suffered severe and permanent injuries including but not limited to left C6 transverse process fracture, multiple bilateral rib fractures, left tibia fracture, left fibula fracture, left foot dorsal degloving injury, fractures to the 2nd, 3rd, 4th and 5th metatarsals, left cuboid fracture, left middle cuneiform fracture, full thickness tear of the left distal supraspinatus tendon, left subscapularis tendinosis, left glenohumeral joint osteoarthritis, left AC joint osteoarthritis, sprains and strains, contusions, bruises, and other injuries, all of which may be permanent in nature.

15.     As a result of the aforesaid incident, Richard Smith has suffered physical and emotional pain, discomfort, frustration, embarrassment, loss of enjoyment of life's pleasures, and

an inability to attend to usual and daily activities and will continue to suffer the same for an indefinite time into the future.

16.    As a further result of the aforesaid incident, Richard Smith has required and continues to require medical treatment in and about an effort to cure himself of his injuries and has incurred medical expenses, to his great detriment and loss, and may continue to require medical treatment for an indefinite time in the future.

17.    As a further result of the aforesaid, Richard Smith suffered from lost wages and may continue to suffer from lost wages into the future as well as a loss of earning capacity.

## COUNT I – STRICT LIABILITY
## RICHARD SMITH v. DEFENDANT

18.    Plaintiffs hereby incorporate the averments contained in the preceding paragraphs as though fully set forth herein at length.

19.    At all times material hereto, Defendant was in the trade or business of designing, manufacturing, testing, marketing, selling, and distributing precast concrete products and accessories including bottom casting turning devices.

20.    Defendant designed, manufactured, tested, marketed, sold and distributed the subject device, placing it into the stream of commerce and selling it in the State of Vermont.

21.    At the time the device left the control of Defendant, it was defective and unreasonable dangerous to people who might reasonably be expected to use it including Plaintiff, Richard Smith.  These defects include, but are not limited to, the conditions described in the following paragraphs.

22.     The hinge pins connecting the base of the device to its vertical frame were not equipped with anything to keep them locked in place while the device was in transport allowing the pins to slide out and the device to collapse on a worker in the area.

23.     The hinge pins connecting the base of the device to its vertical frame were not of an adequate length to ensure they remained in place while the device was being transported which allowed the pins to slide out and the device to collapse on a worker in the area.

24.     In the subject accident, the aforesaid hinge pins failed to remain secured in place and became dislodged during transport of the device via a forklift crane causing the device to collapse and fall on Richard Smith.

25.     The device's design failed to incorporate other designs and technologies that could protect foreseeable users from the device collapsing as a result of the aforesaid hinge pins failing to remain secured in place and becoming dislodged during transport.

26.     The device's hinge pins failed to adequately and reasonably function prior to and during the incident that is the subject of this action.

27.     The device lacked adequate and sufficient warnings and instructions about the risks, dangers and harms presented by the device and reasonable means to reduce such risks, dangers and harms.

28.     Due to the lack of any mechanism to lock the device's hinge pins in place, the inadequate length of the device's hinge pins, and the ability of the device's hinge pins to become dislodged during transports, the device was defective and unreasonably dangerous to people who might reasonably be expected to put it to its normal use including Richard Smith.

29.     The device was expected by Defendant to reach, and did reach, the user without substantial change in the condition it was in at the time that it was manufactured, sold and placed into the stream of commerce by Defendant.

30.     At the time of the aforesaid incident, the device was being used in an expected and reasonably foreseeable manner.

31.     Due to the design and/or manufacturing flaws alleged herein, and the lack of adequate and sufficient warnings, the device was defective and unreasonably dangerous to consumers, such as Richard Smith, who might be reasonably expected to use it.

32.     Defendant designed, manufactured, sold and/or distributed the device in a defective and/or unreasonably dangerous condition in the following ways:

   a.     Designing, manufacturing, selling and/or distributing the device in a defective condition such that the device's hinge pins could become dislodged during transport resulting in the device collapsing;

   b.     Failing to incorporate an alternative safer design and/or other guards or mechanisms to minimize the risk of failure and/or injury during normal and foreseeable use;

   c.     Failing to provide an alternative design and/or mechanism to lock the device's hinge pins in place to prevent them from becoming dislodged during transport;

   d.     Failing to design and/or provide hinge pins for the device of an adequate length to ensure that they could not become dislodged during transport;

   e.     Presenting an unreasonable risk of harm to foreseeable users of the device due to its propensity to catastrophically fail as a result of the hinge pins becoming dislodged during transport;

   f.     Failing to warn users of the device that during regular use, the device's hinge pins could become dislodged during transport resulting in the device collapsing.

   g.     Failing to conduct adequate safety testing before placing the device into the stream of commerce;

h.   Failing to perform an adequate risk analysis of the device;

i.   Advertising and/or marketing the device as capable of performing in ways that it cannot safely perform;

j.   Failing to properly train and/or instruct users how to prevent the device's hinge pins from becoming dislodged during transport;

k.   Failing to properly train and/or instruct users how to properly maintain the device's hinge pins;

l.   Failing to properly test and/or inspect the device for latent manufacturing defects;

m.   Placing the device into the stream of commerce with a manufacturing defect or defects that was the proximate cause of the aforesaid failure; and

n.   Failing to design, manufacture, sell, advertise and/or distribute the device in compliance with applicable ANSI, ASME and/or other industry safety standards.

33.   As a direct and proximate result of the defective and unreasonably dangerous nature of the device, as it existed when it left the custody and control of Defendant, Richard Smith was caused to suffer injuries and damages as described herein above.

34.   Defendant is strictly liable for the injuries suffered by Richard Smith which were caused by defects and inadequacies in the design, manufacture and warnings of the device.

WHEREFORE, Plaintiffs pray for judgment against Defendant in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) that would fairly and reasonably compensate Plaintiffs for their damages plus costs.

## COUNT II – NEGLIGENCE
### RICHARD SMITH v. DEFENDANT

35.   Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as though the same were set forth at length herein.

36.     At all times material hereto, Defendant was engaged in the design, manufacture, testing, marketing, sale and/or distribution of bottom casting turning devices including the subject device.

37.     As a designer, manufacturer, seller and/or distributor of the device, Defendant owed a duty to all reasonably foreseeable users of the device, including Richard Smith, to exercise reasonable care with respect to the design, manufacture, testing, sale, training, instruction and warnings associated with the device.

38.     Defendant breached its duty of care, *inter alia*, by committing the following acts and/or omissions:

a.      Designing, manufacturing, selling and/or distributing the device in a defective condition such that the device's hinge pins could become dislodged during transport resulting in the device collapsing;

b.      Failing to incorporate an alternative safer design and/or other guards or mechanisms to minimize the risk of failure and/or injury during normal and foreseeable use;

c.      Failing to provide an alternative design and/or mechanism to lock the device's hinge pins in place to prevent them from becoming dislodged during transport;

d.      Failing to design and/or provide hinge pins for the device of an adequate length to ensure that they could not become dislodged during transport;

e.      Failing to exercise reasonable care by preventing the device from creating an unreasonable risk of harm to foreseeable users of the device due to its propensity to catastrophically fail as a result of the hinge pins becoming dislodged during transport;

f.      Failing to warn users of the device that during regular use, the device's hinge pins could become dislodged during transport resulting in the device collapsing.

g.      Failing to conduct adequate safety testing before placing the device into the stream of commerce;

h.      Failing to perform an adequate risk analysis of the device;

i.    Advertising and/or marketing the device as capable of performing in ways that it cannot safely perform;

j.    Failing to properly train and/or instruct users how to prevent the device's hinge pins from becoming dislodged during transport;

k.    Failing to properly train and/or instruct users how to properly maintain the device's hinge pins;

l.    Failing to properly test and/or inspect the device for latent manufacturing defects;

m.    Placing the device into the stream of commerce with a manufacturing defect or defects that was the proximate cause of the aforesaid failure; and

n.    Failing to design, manufacture, sell, advertise and/or distribute the device in compliance with applicable ANSI, ASME and/or other industry safety standards.

39.    Defendant's breaches of its duty of care constitute negligence.

40.    Defendant knew or should have known through the exercise of reasonable care that the device was designed, manufactured, sold and/or distributed in an unreasonably dangerous condition.

41.    As a direct and proximate result of Defendant's aforesaid negligence, Richard Smith was caused to suffer injuries and damages as described herein above.

WHEREFORE, Plaintiffs pray for judgment against Defendant in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) that would fairly and reasonably compensate Plaintiffs for their damages plus costs.

## COUNT III – BREACH OF WARRANTIES
## RICHARD SMITH v. DEFENDANT

42.    Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as though the same were set forth at length herein.

43. Defendant knew the particular purposes for which the device and its components were for and were to be used, and that purchasers and users of the device would rely on Defendant's skill and judgment in designing, testing, manufacturing, furnishing and selling goods suitable for such purposes and uses.

44. The device, including its component parts, was not free from defects or fit for the purpose for which it was to be used, and was in fact defectively designed, manufactured and distributed and imminently dangerous to its users, and caused serious and permanent injuries to its users, including Richard Smith, thereof while being used in a manner reasonably foreseeable to Defendant. As a result, the device was unsafe and dangerous for use by the consumer including Richard Smith.

45. Defendant expressly and impliedly warranted to foreseeable users of the device that the device was fit for the purpose for which it was intended to be used and was free from design and manufacturing defects. In particular, Defendant expressly and impliedly warranted that the device's hinge pins would hold in place and not become dislodged during transport such that the device would collapse and place users at an unreasonable risk of harm.

46. Defendant expressly and impliedly warranted to purchasers and users of the device that it was suitable for its intended use, was of merchantable quality and would provide adequate protection for its intended and foreseeable use. Specifically, Defendant expressly warranted, through means such as the device's owner's manual, that the device's hinge pins would hold in place and prevent the device from collapsing during transport and other reasonably foreseeable uses. The warranty was not limited and extended to future performance.

47. The device was defective and was not of merchantable quality, and was not fit for its intended purpose in that it was capable of causing, and, in fact, did cause serious and

permanent injuries to users and consumers thereof, including Richard Smith, while being used in a manner reasonably foreseeable to Defendant.

48.     As a direct and proximate result of the breach by Defendant of its express and implied warranties, Richard Smith was caused to suffer injuries and damages as described herein above.

WHEREFORE, Plaintiffs pray for judgment against Defendant in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) that would fairly and reasonably compensate Plaintiffs for their damages plus costs.

## COUNT IV – LOSS OF CONSORTIUM
## NANCY SMITH v. DEFENDANT

49.     Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as though the same were set forth at length herein.

50.     At all times relevant hereto, Nancy Smith was and is the wife of Plaintiff, Richard Smith.

51.     By reason of the aforesaid acts and/or omissions of Defendant, Nancy Smith has been deprived of the society, comfort, companionship, and services of Richard Smith, and such deprivation will continue into the future, all of which has and will continue to be to her financial and emotional detriment and loss.

52.     By reason of the aforesaid acts or omissions of Defendant, Nancy Smith has and/or may incur various expenses and may in the future be obliged to spend various sums for medicine and medical treatment in an attempt to treat and cure her husband, Richard Smith.

WHEREFORE, Plaintiffs pray for judgment against Defendant in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) that would fairly and reasonably compensate Plaintiffs for their damages plus costs.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

**BEHRENS VENMAN, PLLC**

BY:

Robert S. Behrens (VT State Bar #2840)
Behrens Venman, PLLC
One Lawson Lane, Suite 140
Burlington, VT 05401
Telephone:  (802) 658-5900
Facsimile:  (802) 658-5222
Email:  rsb@bvslawvt.com
*Attorney for Plaintiffs*

Dated: September 1, 2020